**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David B. Jones, | ) | No. CV-07-0775-PHX-SMM |
| Plaintiff, | ) | **MEMORANDUM OF DECISION AND ORDER** |
| v. | ) | |
| Wal-Mart Stores, Inc., et. al., | ) | |
| Defendants. | ) | |

Before the Court is Defendants Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc.'s ("Defendants") Motion for Summary Judgment (Dkt. 36). Having considered the parties' memoranda and other submissions, the Court now issues this Memorandum of Decision and Order granting Defendants' motion.[1]

## BACKGROUND

Plaintiff brought his Amended Complaint alleging that Defendants falsely charged him with harassing female co-workers and treated him worse than other employees (Dkt. 12, Am. Compl. ¶¶ 9-10). Plaintiff, an African American, further alleges that Defendants disparately treated and terminated him due to his race (Id. ¶¶ 10-12).

From March 2001 until May 2005, Plaintiff worked for Defendants as a truck driver (Dkt. 43, Pl.'s Statement of Facts ("PSOF") ¶ 1). Plaintiff had a stellar driving record for

---

[1] The parties did not request oral argument in connection with this motion.

Defendants (Id. ¶ 3). He regularly received raises and praise from his supervisors for his driving record (Id. ¶ 4). In March 2005, Defendants asked Plaintiff to serve on a special committee that evaluated potential new hires for the company (Id. ¶ 5).

At the time of his termination, Plaintiff worked out of a facility in Buckeye, Arizona (Id. ¶ 6). In April 2005,[2] a female employee reported to Bill Hudnall, the General Transportation Manager at the Buckeye facility, of a conversation between Plaintiff and another female employee that she considered sexual harassment (Id.; Dkt. 37, Def.'s Statement of Facts ("DSOF") ¶ 9). As a result, Hudnall referred the matter to a human resources employee, Tonya Runnels (PSOF ¶ 7). Runnels commenced an investigation (Id.).

The entire file on the investigation of Plaintiff is contained in Defendants' "Investigation Report and Guide," which Plaintiff submitted under seal (PSOF ¶ 13; Dkt. 47, Ex. 2). According to Plaintiff, Defendants "ultimately determined that Plaintiff had: (1) verbally sexually harassed a woman (Desiree Draman) over the telephone; and (2) physically touched a woman (Yolanda Lopez) in a sexual manner" (PSOF ¶ 14). With regards to the claim of verbal sexual harassment, Defendants relied upon the statements of Draman, Angie Johnson, and Annette Perez (Id. ¶ 15). With regards to the claim of physical touching, Defendants relied on the statements of Lopez and Draman (Id. ¶ 16). Defendants also interviewed twenty-four other employees who did not report any sexual harassment by Plaintiff (Id. ¶ 17). When Defendants interviewed Plaintiff, he denied the allegations against him in their entirety (Id. ¶ 44). At the conclusion of their investigation, Defendants terminated Plaintiff on May 3, 2005 (Id. ¶ 45).

In May 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Am. Compl. ¶ 15; Dkt. 1, Ex. A). On November 22, 2006, the EEOC mailed Plaintiff a right-to-sue letter, along with a Dismissal and Notice of

---

[2] The parties dispute the exact date of when the female employee reported the alleged sexual harassment to Defendants. Defendants contend that she reported it on April 1, 2005 while Plaintiff alleges April 27, 2005 (DSOF ¶ 9; PSOF ¶ 6).

Right to Sue form (collectively, "Notice"), informing Plaintiff that the EEOC dismissed his claim (Am. Compl. ¶ 16; Dkt. 1, Ex. B.). The Notice informed Plaintiff of his rights under federal law to pursue the matter in federal court, and that he had only ninety days "from the date that delivery of the Notice was <u>attempted</u> at your last known address of record or 90 days of receipt of the Notice, whichever is earlier . . ." (Dkt. 1, Ex. B) (emphasis in original). The EEOC sent the Notice to the address Plaintiff provided on the claim form he filed. However, Plaintiff changed addresses between the filing of the claim and the mailing of the Notice. Plaintiff alleges that he informed the EEOC investigator of his change of address both verbally and in writing (PSOF ¶ 48). As a result, Plaintiff alleges that he did not learn of the Notice until February 22, 2007 (<u>Id.</u> ¶ 57).

On April 13, 2007, Plaintiff filed his Complaint in this action (Dkt. 1). On June 28, 2007, Plaintiff brought an Amended Complaint alleging race discrimination in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Dkt. 12).

On October 31, 2008, Defendants moved for summary judgment (Dkt. 36). Plaintiff responded to and Defendants replied in support of the motion (Dkts. 42, 49). In their reply, Defendants objected to Plaintiff's submission of two unsigned declarations by Irene Berry and Plaintiff (Dkt. 49). In the meantime, Plaintiff moved to strike Kevin Upham's affidavit (Dkt. 41) and moved the Court to either accept Irene Berry's declaration as signed or allow him to depose her (Dkt. 51). The Court denied both motions and ordered Plaintiff to provide the signed declarations of Berry and Plaintiff by May 8, 2009 (Dkt. 53). Plaintiff provided his signed declaration, but he did not provide one for Irene Berry (Dkt. 54). Therefore, the Court will disregard Irene Berry's declaration in support of Plaintiff's response to the motion for summary judgment (<u>See</u> Dkt. 53).

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Jesinger v. Nev. Fed. Credit Union</u>, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>Jesinger</u>, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see</u> <u>Jesinger</u>, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." <u>Celotex</u>, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322; <u>see also</u> <u>Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." <u>Id.</u> at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-88 (1986); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).

## DISCUSSION

Defendants seek summary judgment on Plaintiff's race discrimination claim for two reasons (Dkt. 36). First, Defendants contend that the ninety-day statute of limitations bars Plaintiff's claim because he filed this lawsuit 142 days after the EEOC issued a notice of right to sue (<u>Id.</u> at 1:20-23). Nonetheless, Defendants contend that Plaintiff cannot raise any genuine issue of material fact from which a jury could conclude that they discriminated

against him in violation of Title VII (Id. at 1:23-25).  Therefore, Defendants argue they are entitled to summary judgment on Plaintiff's race discrimination claim under Title VII (Id.).

## I.      Statute of Limitations

Before a claimant can bring a Title VII action, he must timely file a charge of discrimination with the EEOC.  Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1996), cert. denied, 522 U.S. 858 (1997).  If the EEOC dismisses the charge, the claimant has ninety days to file a civil action.  Id.; 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved . . .").  The ninety-day period is not jurisdictional, but rather it acts as a statute of limitations.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).  As such, the period is subject to waiver as well as equitable tolling.  Id.  If a claimant fails to file an action within the ninety day period, then the action is barred.  Nelmida, 112 F.3d at 383.

As the statute of limitations is an affirmative defense, "the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."  Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007) (citations omitted).  The defendant may meet that burden "by raising the limitations defense and providing sufficient evidence to support the presumption."  Id. at 1123.

Plaintiff filed this claim on April 13, 2007, which is 142 days after the EEOC mailed the Notice and fifty days after Plaintiff allegedly learned of the Notice.  Defendants claim that Plaintiff failed to timely file his suit, and therefore, they seek summary judgment dismissing this case.  Plaintiff argues that February 22, 2007, when he learned of the Notice, marks the beginning point of the ninety-day time period.  Alternatively, Plaintiff argues that the doctrine of equitable tolling should apply.

### A.      When the Ninety-day Period Commences

The parties dispute when the ninety-day period began running.  The Ninth Circuit "measure[s] the start of the limitations period from the date on which a right-to-sue notice

letter arrived at the claimant's address of record." Id. at 1122 (citing Nelmida, 112 F.3d at 384; Scholar, 963 F.2d 264, 267 (9th Cir. 1992)). "Where that date is known, [the court] will deem the claimant to have received notice on that date, regardless of whether the claimant personally saw the right-to-sue letter." Id. (citing Nelmida, 112 F.3d at 384; Scholar, 963 F.2d at 267). Where that date is unknown, but the parties do not dispute receipt itself, the Ninth Circuit applies a presumptive receipt date based on when the EEOC issued the notice, plus three days of mailing time. Id. at 1122, 1125. However, the Ninth Circuit has not explicitly determined the issue here when both the date is unknown and the parties dispute receipt itself.

Defendants contend that Plaintiff's ninety-day period began when the EEOC mailed the Notice. Plaintiff advocates that it began when he received actual notice because the EEOC did not mail the Notice to his correct address. In support of his position, Plaintiff alleges that he informed the EEOC of his address change both verbally and in writing. Although the Ninth Circuit has not specifically considered Plaintiff's circumstances, the Ninth Circuit has previously held that "the ninety-day period within which to file suit began running when delivery of the right-to-sue notice was *attempted* at the address of record with the EEOC . . ." Nelmida, 112 F.3d at 384 (emphasis added). The Ninth Circuit has held that actual notice is not required, instead focusing on the EEOC's attempted delivery at the address in its record. See id.; see also Scholar, 963 F.2d at 267 ("The language of the statute establishes the 90-day period as running from the 'giving of such notice' rather than from the date claimant actually 'receives' notice in hand."). Plaintiff's argument that the EEOC mailed the Notice to the wrong address, through no fault of his own, is more properly an argument for equitable tolling. As such, the Court finds that the limitations period began on the date on which the EEOC attempted delivery of the Notice at Plaintiff's address of record, which is 3 days after the EEOC mailed the Notice on November 22, 2006. See Payan, 495 F.3d at 1122-25. Plaintiff did not commence this action until April 13, 2007, nearly two months after the 90 day period had expired.

## B.    Equitable Tolling

Alternatively, Plaintiff argues that the doctrine of equitable tolling should apply to prevent his claim from being barred.  As noted, the doctrine of equitable tolling applies to the ninety-day period because it is a statute of limitations.  <u>Nelmida</u>, 112 F.3d at 384. However, principles of equitable tolling do not apply to "garden variety claim[s] of excusable neglect."  <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990).  Courts apply equitable tolling only sparingly and are "generally unforgiving . . . when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights.'"  <u>Nelmida</u>, 112 F.3d at 384 (quoting <u>Scholar</u>, 963 F.2d at 268 and <u>Irwin</u>, 498 U.S. at 96).  The person claiming to be aggrieved has the responsibility to provide the EEOC with notice of any change in address.  29 C.F.R. § 1601.7(b).  This responsibility is placed on the claimant because "[i]t is unreasonable to expect the EEOC to pore over its files . . . in an effort to ascertain which of the addresses contained therein is correct."  <u>St. Louis v. Alverno Coll.</u>, 744 F.2d 1314, 1316-17 (7th Cir. 1984), cited with approval in, <u>Nelmida</u>, 112 F.3d at 383.

In <u>Nelmida</u>, the Ninth Circuit followed the lead of the Sixth, Eighth, and Fourth Circuits in declining to apply equitable tolling to Nelmida's case.  112 F.3d at 384-85.  The Ninth Circuit focused on three considerations:  (1) whether she was "diligent in insuring that she receive the right-to-sue notice from the EEOC;" (2) whether she had actual knowledge and notice; and (3) whether she promptly acted to file suit when she received actual knowledge and notice.  <u>Id.</u> at 385.

In contending that equitable tolling applies, Plaintiff distinguishes his case from <u>Nelmida</u> and the other Circuits' cases because of his diligent efforts (Dkt. 42 at 14-16). Plaintiff changed his address between the filing of his claim and the mailing of the Notice. In August 2006, Plaintiff filled out a change of address form with the United States Postal Service so that any letters mailed to him should have been forwarded to his new address (<u>See</u> Dkt. 54, Decl. of David B. Jones ¶ 24).  However, the EEOC never notified Plaintiff that he needed to submit a change of address form *to them* in writing (<u>Id.</u> ¶ 3).  Despite this, Plaintiff

avows that he informed the EEOC investigator, Jae Richardson, of his change of address both verbally and in writing (Id. ¶ 12). In July 2006, he provided Richardson with his new address over the phone, which she allegedly noted in his file (Id. ¶¶ 3, 13). During this time, the EEOC never sent him a change of address form or requested that he fill one out (Id. ¶ 14). After the EEOC issued the Notice, but before he had actual receipt of it, he continued to call the EEOC in order to inquire about the status of his claim (Id. ¶ 15). He called the EEOC three times on January 8, 2007 and twice on January 23, 2007 (Id. ¶ 16). On February 22, 2007, Plaintiff finally demanded to speak with an EEOC supervisor (Id. ¶ 19). Around this time, the EEOC supervisor informed him that they had dismissed his case and issued Notice on November 22, 2006 (Id. ¶ 20). Plaintiff requested that the EEOC either re-open the case or re-issue Notice (Id. ¶ 22). On April 6, 2007, the EEOC informed him that it would not do so (Id. ¶ 23). Plaintiff then initiated this lawsuit on April 13, 2007 (Dkt. 1).

Defendants argue that Plaintiff must have affirmatively and explicitly informed the EEOC of his address change, which he did not do (Dkt. 36, 10:23-11:7). Citing Alverno College, Defendants argue that Plaintiff had the responsibility to notify the EEOC of his change in address, and it is unreasonable to expect the EEOC to pore over its files. Defendants allege that Plaintiff only notified the EEOC of his address change by including his name and address at the end of a letter to them dated September 27, 2006 (DSOF ¶ 39). Therefore, Defendants assert that Plaintiff did not act reasonably by requesting in writing that the EEOC change his records.

After considering Plaintiff's circumstances, the Court finds that Plaintiff acted diligently. Although Plaintiff has the responsibility to provide the EEOC with notice of any change in address, Plaintiff is not required to provide that notice in any particular form. See 29 C.F.R. § 1601.7(b). The EEOC did not notify Plaintiff whether he needed to make address changes verbally or in writing. Plaintiff made at least one attempt in writing, although he did not prominently display it or bring it to the EEOC's attention. Plaintiff also avows that he notified his EEOC investigator of his address change over the phone in July

2006. Moreover, Plaintiff's phone records demonstrate that he contacted the EEOC five times in January 2007. Defendants are correct that the records only show that Plaintiff contacted the EEOC but do not prove he notified the EEOC of his address. At the very least, though, Plaintiff's phone calls to the EEOC indicate that he was diligently pursuing his case. Certainly it would have been better if Plaintiff had clearly notified the EEOC in writing. Without any directive regarding how to notify the EEOC of a change in address, though, a letter and verbal notification can be viewed as sufficient. Whether Plaintiff demonstrates excusable neglect is a close call, but given his efforts, the Court finds that he was diligent in insuring that he receive the Notice from the EEOC. See Nelmida, 112 F.3d at 385; see also Alverno Coll., 744 F.2d at 1317 ("[C]laimants who do not receive actual knowledge of their right-to-sue letter through no fault of their own should not be penalized.").

As Plaintiff acted diligently, the Court should consider whether he promptly filed suit when he received actual notice. Plaintiff alleges he did not receive actual notice until on or about February 22, 2007 (Dkt. 54, Decl. of David B. Jones ¶ 20). At this time, an EEOC supervisor informed him that the EEOC had dismissed his case, the EEOC had issued Notice on November 22, 2006, and the time for filing suit had passed (Id.). It should be noted, though, that under the above analysis, if Plaintiff received actual notice on or around February 22, 2007, then the ninety-day period would not have yet run out. Plaintiff may have had one or more days to file his suit. The Ninth Circuit has found that having more than 10 weeks before a period runs out is inexcusable, but the Ninth Circuit has not determined whether a Plaintiff's failure to file a suit within a short few days is excusable. See Nelmida, 112 F.3d at 385 (finding that more than ten weeks after receiving a copy of the Notice to timely file a complaint "is certainly sufficient time to commence an action); see also Scholar, 963 F.2d at 268 (noting that plaintiff still had 76-83 days in which to preserve her legal rights). Furthermore, the EEOC told Plaintiff that the period had already run. The EEOC did not inform Plaintiff until April 6, 2007 that it would not re-open the case. Plaintiff then

1    initiated this lawsuit seven days later on April 13, 2007. Given these circumstances, the

2    Court finds that Plaintiff promptly acted to file suit when he received actual notice.

3         Finally, Defendants speculate that the EEOC "probably sent the [Notice] to Plaintiff's

4    attorney" (Dkt. 36, 11:10-11). Therefore, Defendants assert that the Court should not

5    equitably toll the period when the attorney's knowledge can be imputed to Plaintiff (Id. at

6    11:11-18). Plaintiff's counsel declares that he did not represent Plaintiff at the time the

7    EEOC sent the Notice, and he did not receive a copy of it (Dkt. 42 at 14 n.2). Viewing the

8    facts in the light most favorable to Plaintiff, the Court finds that equitable tolling is

9    appropriate so that the ninety-day period does not bar Plaintiff's claims. Therefore, the Court

10   will determine Plaintiff's claim on its merits.

11   **II.    Race Discrimination**

12        In his Amended Complaint, Plaintiff asserts a race discrimination claim against

13   Defendants. Plaintiff alleges that because of his race, Defendants treated him differently

14   from other non-African American employees during their investigation of the sexual

15   harassment charges against him in violation of Title VII (Am. Compl. ¶¶ 9-12). Title VII

16   protects against discrimination on the basis of an individual's race, color, religion, sex, or

17   national origin. 42 U.S.C. § 2000e-2(a)(1).

18       **A.    Prima Facie Case**

19        To establish a prima facie case under Title VII, a plaintiff must offer proof that (1) he

20   is a member of a protected class; (2) he was qualified for his position; (3) he experienced an

21   adverse employment action; and (4) similarly situated individuals outside his protected class

22   were treated more favorably, or other circumstances surrounding the adverse employment

23   action give rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green,

24   411 U.S. 792, 802 (1973); Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006). If plaintiff

25   establishes a prima facie case, then defendant has the burden of producing a legitimate

26   nondiscriminatory reason for its employment decision. See Wallis v. J.R. Simplot Co., 26

27   F.3d 885, 889 (9th Cir. 1994). If defendant meets this burden, plaintiff must raise a genuine

28

issue of material fact that defendant's reason is a pretext for discrimination – i.e., the reason is false or the true reason was a discriminatory one. See id.

Here, Plaintiff established the first three elements of a prima facie disparate treatment claim on the basis of race. Plaintiff submitted proof: (1) that he is an African American, a protected class under Title VII (PSOF ¶ 2); (2) that he was qualified for his position (Id. ¶¶ 3-5); and (3) that he was terminated, an adverse employment action (Id. ¶ 45). See Moran, 447 F.3d at 753.

As noted, the fourth element of a prima facie claim requires the plaintiff to demonstrate that defendants treated similarly situated individuals outside his protected class more favorably, or that other circumstances surrounding the adverse employment action give rise to an inference of discrimination. See id. A plaintiff must show that he is "similarly situated to those employees in all material respects." Id. at 755 (citing Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002)). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).

To establish the fourth element, Plaintiff presents evidence that Defendants treated him differently from six non-African American male drivers who were also accused of inappropriate behavior. Plaintiff contends that Defendants simply conducted "performance reviews" of the other employees and did not terminate them (Dkt. 42 at 9). In contrast, Defendants launched a full-scale investigation against Plaintiff and terminated him (Id. at 9-10). Furthermore, Plaintiff alleges that during his investigation, Defendants learned of four more non-African American male employees who allegedly committed sexual or racial harassment but did not investigate them (PSOF ¶¶ 42-43).[3]

---

[3] Plaintiff simply mentions these four people in passing (Dkt. 42 at 10), and Plaintiff presents no evidence that these people engaged in similar conduct as Plaintiff. Furthermore, at least one of the accused's conduct pertained to racial discrimination, not sexual harassment.

Defendants refute Plaintiff's assertion that they treated similarly situated individuals outside his protected class more favorably (Dkt. 36, 13:7-8). Specifically, Defendants argue that the six employees are not similarly situated to Plaintiff (Id. at 13:8-20). Defendants allege that Plaintiff "simply makes unfounded, conclusory allegations that [the six employees] also engaged in 'sexual harassment,' [which] runs contrary to the admissible evidence submitted in this case" (Dkt. 49, 8:25-26). Further, there is no admissible evidence that any of the other employees' actions rose to the same level of Plaintiff's conduct, both in terms of severity and frequency (Id. at 8:21-23). In five of the six cases, Defendants contend that the individual was accused of a single, not repeated, incident of inappropriate conduct (Id. at 9:1-2). Furthermore, in at least one of the cases, the conduct was not of a sexual nature (Id. at 9:2-3). The Court discusses each of the six male employees accused of sexual harassment in order to determine whether they are similarly situated individuals.

a. Dameon Seo

Plaintiff contends that Dameon Seo asked a woman to take off her clothes. The investigation report consists of one page and contains no interviews. Defendants did not discipline Seo because they believed that Seo miscommunicated with the woman because he did not speak English well (PSOF ¶ 36). After reviewing Seo's investigation report, which Plaintiff filed under seal, it appears that Seo intended to comment on the woman's weight loss. Seo stated that he did not intend for the woman to take off her clothes, that she misinterpreted the statement due to a language barrier because Korean is his native language, and that he would be extremely careful in the future (Dkt. 47, Ex. 4). Most importantly, the Court does not find that Seo engaged in similar conduct as Plaintiff because Seo had only one instance of allegedly inappropriate conduct. Therefore, Plaintiff and Seo are not similarly situated. See Vasquez, 349 F.3d at 641.

b. Jim Coburn

Plaintiff alleges that Jim Coburn approached a female employee from behind, gave her a hug, squeezed her shoulder, and held on to her for a few seconds. Coburn then told the

employee that he wanted to marry her. The investigation report consists of one page and contains no interviews. Defendants told Coburn not to repeat this behavior (PSOF ¶ 37). Even assuming these allegations are true, the Court finds that Coburn's conduct was not as severe as Plaintiff's inappropriate touching. Furthermore, Coburn allegedly committed one instance of inappropriate behavior in contrast with Plaintiff's alleged repeated behavior. Therefore, Plaintiff and Coburn are not similarly situated. See Vasquez, 349 F.3d at 641.

### c. Carl Tennison

Plaintiff claims that Carl Tennison made a racial or national origin statement, which four different employees witnessed. The investigation report is six (6) pages and contains four (4) statements. Defendants required Tennison to take diversity training, which he completed (PSOF ¶ 38; Dkt. 47, Ex. 6). The Court finds that Tennison did not engage in similar conduct. Although Tennison's alleged racially discriminatory conduct is offensive, it was not of a sexual nature like Plaintiff's conduct. As Tennison did not engage in the same type of offense as Plaintiff, he is not similarly situated to Plaintiff. See Vasquez, 349 F.3d at 641 (discussing how the alleged similarly situated employee was "not involved in the same type of offense" as plaintiff).

### d. Guy Horn

In one day, Plaintiff alleges that Guy Horn made seven (7) separate sexually harassing statements toward women. The investigation report is 14 pages long and contains five (5) statements. According to Plaintiff, Defendants did not conduct an investigation against Horn like the one launched against Plaintiff. Nonetheless, Plaintiff alleges that at least one of Defendants' managers believes that Horn "should have been fired." However, Plaintiff further alleges that Defendants simply gave Horn a warning and did not fire him (PSOF ¶ 39). Plaintiff filed under seal the investigation report of Horn (Dkt. 47, Ex. 7). The report documents Horn's inappropriate comments and behavior during a safety awareness session and in the cafeteria on one day, September 4, 2003. Horn made inappropriate comments of a sexual nature about his co-workers and passers by in the presence of his co-workers. After

Horn first made inappropriate comments, his manager took him aside and informed him that the comments were not appropriate in the workplace. Although Horn stated that he would not make any more comments, he continued to make inappropriate comments throughout the day. As a result, Defendants required Horn to take Step III training (Id.).

Whether Horn displayed similar conduct as Plaintiff is a close call. Like Plaintiff, Horn made several inappropriate statements of a sexual nature, albeit only in one day. Although Horn made several comments, he did not do so with the frequency over a period time like Plaintiff. Furthermore, Horn directed many of his statements at non-employees, drivers who were passing by in traffic, which does not constitute sexual harassment under Title VII. See Silver v. KCA, Inc., 586 F.2d 138, 140-42 (9th Cir. 1978) (discussing how Title VII is only directed at the eradication of unlawful employment practices by employers against employees). On the same day, though, Horn directed his comments at one of his female co-workers, which prompted her to request a transfer. The female employee's request to transfer is some indication of the severity of the alleged harassment. Considering the relative infrequency and the alleged severity of Horn's inappropriate behavior, and viewing the facts in the light most favorable to Plaintiff, the Court finds that Horn displayed somewhat similar conduct as Plaintiff. Therefore, the Court finds that Plaintiff has shown a genuine issue of material fact over whether Horn is a similarly situated employee. See Vasquez, 349 F.3d at 641.

e. Donald Anderson

Plaintiff contends that Donald Anderson mistreated female associates. Defendants advised Anderson not to conduct himself in this manner any longer (PSOF ¶ 40). The investigation report is one page long and contains no interviews. Plaintiff submitted the investigation report under seal (Dkt. 47, Ex. 8). However, the report contains no allegations that Anderson engaged in inappropriate behavior of a sexual nature. In fact, the investigation report simply addresses complaints made by several Associates, some of whom happen to be female, about Anderson's general poor demeanor. The report also addresses a few other

concerns, but there are absolutely zero concerns related to inappropriate sexual behavior. Therefore, the Court finds that Anderson did not engage in similar conduct as Plaintiff, and therefore, they are not similarly situated. See Vasquez, 349 F.3d at 641.

f. Chris Evans

Plaintiff claims that Chris Evans sexually harassed Briana Soto and Irene Berry by talking about his anatomy and certain sex acts. Plaintiff also alleges that a manager, Jabo Floyd, threatened Soto and Berry that if they initiated a lawsuit for sexual harassment, they could not work for Defendants. Plaintiff further alleges that Defendants transferred Evans to a different shift, but they did not fire him (PSOF ¶ 41). Plaintiff's *only* evidence of this incident consisted of Irene Berry's Declaration, which the Court struck because Berry did not sign it (See Dkt. 53, Order dated April 28, 2009). Plaintiff had filed the declaration, despite the fact that Berry did not sign it and later refused to sign it (Id. at 4:1-7). Without any evidence, Plaintiff does not demonstrate that Evans is a similarly situated employee outside Plaintiff's protected class who was treated more favorably.

Plaintiff has produced evidence for only one non-African American male, Guy Horn, to create a genuine issue of material fact over whether Horn is a similarly situated individual outside Plaintiff's protected class who Defendants treated more favorably. The Court finds that Plaintiff has barely produced the requisite degree of proof necessary to establish a prima facie case that other employees with similar qualifications were treated more favorably. See Chuang v. Univ. of Cal. Davis, Bd. of Trustees., 225 F.3d 1115, 1124 (9th Cir. 2000) ("Under the McDonnell Douglas framework, '[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'") (alteration in original) (quotation omitted). As a result, Plaintiff is entitled to a presumption that Defendants terminated him because he is African American. See McDonnell Douglas, 411 U.S. at 802. The burden now shifts to Defendants to produce evidence of a legitimate and non-discriminatory reason for terminating Plaintiff. Vasquez, 349 F.3d at 640.

### B. Legitimate and Non-discriminatory Reasons

By presenting evidence of Plaintiff's sexual harassment of their female employees, Defendants have met their burden of showing that they terminated Plaintiff for legitimate and non-discriminatory reasons. Plaintiff knew of Defendants' Harassment, Discrimination and Inappropriate Conduct Policy, and he even completed refresher training on the policy a month before Defendants investigated him for violating it (DSOF ¶¶ 7-8). On April 1, 2005, a female Associate reported to Transportation Center General Manager Bill Hudnall that Plaintiff called and made inappropriate sexual comments to another female Associate, Desiree Draman (Id. ¶ 9). Hudnall immediately reported the matter to the facility's Personnel Manager, Tonya Runnels, who began an investigation (Id. ¶ 10). In turn, Runnels contacted her manager, Kevin Upham, who is the Regional Personnel Manager for six states, including Arizona, and is based in Bentonville, Arkansas (Id. ¶¶ 11-12). Runnels discussed the allegations and investigation against Plaintiff (Id. ¶ 11). Because Runnels was a relatively new employee, Upham discussed proper interviewing techniques with her (Id. ¶ 15; Dkt. 36, 3:6-7). He also reminded her to conduct the investigation in a fair and unbiased manner because of the potentially serious allegations against Plaintiff (DSOF ¶ 15).

After about a week, Upham contacted Runnels about the progress of the investigation. Runnels told him that she had interviewed several female Associates (Id. ¶ 16). The female Associates supported the initial complaint and gave additional examples that Plaintiff made repeated, offensive, and inappropriate comments to more than one woman (Id.). Furthermore, Plaintiff had repeatedly touched a female Associate in an inappropriate and offensive manner (Id.). Based on the seriousness of the allegations, Upham decided that they should expand the investigation to ensure its fairness (Id. ¶ 17). In addition, he reported the results of the investigation to his Director, Ed Parrish, who agreed that Upham should travel to Buckeye in order to personally lead the investigation (Id.).

From April 25-28, 2005, Upham interviewed all female Associates who may have encountered Plaintiff and the male Associates who worked during the day shift when Plaintiff

allegedly acted inappropriately (Id. ¶ 19). Upham interviewed a total of about 27 Associates (Id.). Defendants contend that Upham interviewed Plaintiff twice during his investigation, but Plaintiff alleges that he only interviewed Plaintiff once (Id. ¶ 22; Dkt. 54, Decl. of David B. Jones ¶ 2). Upham told Plaintiff about the allegations and gave him an opportunity to respond (DSOF ¶ 22). Plaintiff denied all the allegations (Id.). At the conclusion of his investigation, Upham prepared a document setting forth his findings and conclusions (Id. ¶ 24). Based on his investigation, Upham determined that there was "substantial, credible and corroborated evidence that Plaintiff had violated Wal-Mart's Harassment, Discrimination and Inappropriate Conduct Policy" (Id. ¶ 24). After completing his investigation, Upham presented his findings to Parrish verbally and in writing (Id. ¶ 29). They discussed the findings in detail (Id.). Parrish then decided that termination was warranted (Id.).

Defendants have shown that they terminated Plaintiff because of his repeated inappropriate behavior in violation of their sexual harassment policies (Dkt. 36, 14:2-3). By producing evidence of their concern about Plaintiff's workplace misconduct based on their investigation, Defendants have met their burden of demonstrating a legitimate and non-discriminatory reason for terminating Plaintiff's employment.

### C. Pretext

Plaintiff is now required to produce evidence sufficient to create a genuine issue of fact as to whether Defendants's legitimate and non-discriminatory reason was a mere pretext for discrimination. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence" because it is inconsistent or otherwise not believable. Vasquez, 349 F.3d at 641; Dominguez-Curry v. Nev. Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original). Where an individual who exhibits bias has significant influence or leverage over

the formal decision maker, such direct evidence is sufficient evidence of discrimination to defeat summary judgment. <u>Dominguez-Curry</u>, 424 F.3d at 1040 n.5. "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." <u>Vasquez</u>, 349 F.3d at 642; <u>Godwin</u>, 150 F.3d at 1222 ("[Circumstantial] evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [race].") (citations omitted).

### 1. The Decision Maker's Intent Does Not Demonstrate Pretext

Plaintiff does not offer any direct evidence that Defendants' motives were discriminatory. In particular, Plaintiff has offered no direct evidence that racial bias motivated Tonya Runnels and Kevin Upham in their investigation of Plaintiff. Upham declared that "[b]ased on the interviews, supporting documentation and the credibility of the witnesses, there was substantial, credible and corroborated evidence" that Plaintiff had violated Defendants' sexual harassment policies (Dkt. 37, Ex. 5, Decl. of Kevin Upham ¶ 14). Based on Plaintiff's conduct, Upham "felt [Plaintiff's] behavior warranted severe discipline or termination" (<u>Id.</u> ¶ 17). Upham stated his belief that he "conducted the interviews and the entire investigation in a neutral, unbiased way. [Plaintiff's] race certainly played no part in [his] investigation" (<u>Id.</u> ¶ 18). Plaintiff has produced no direct evidence that Runnels and Upham investigated Plaintiff because he is African American. Rather, the evidence shows that Runnels and Upham investigated Plaintiff because of the sexual harassment allegations against him. While Runnels and Upham may have had significant influence or leverage over the formal decision to terminate Plaintiff because they initiated or led his investigation, Plaintiff has not shown that they exhibited any racial bias toward him. <u>See</u> <u>Dominguez-Curry</u>, 424 F.3d at 1040 n.5.

Moreover, the person who ultimately made the termination decision, Ed Parrish, is also African American (DSOF ¶¶ 17, 29). As noted, Parrish is Upham's supervising Director (<u>Id.</u> ¶ 17). Upham presented his findings and conclusions to Parrish both verbally and in

writing (Id. ¶ 29). Upham and Parrish discussed the findings in detail, but ultimately Parrish made the termination decision (Id.). Defendants have shown that Parrish made the decision after considering the full investigation and its findings, and Plaintiff has no direct evidence that racial bias motivated Parrish. Therefore, Plaintiff has no direct evidence that discrimination more likely motivated Defendants.

### 2. The Manner of Investigation Does Not Demonstrate Pretext

While Plaintiff has not produced any direct evidence of discrimination, Plaintiff relies on circumstantial evidence to establish pretext. Similar to his argument for a prima facie claim, Plaintiff contends that Defendants' investigation of Plaintiff differed from the investigation of similarly situated non-African American employees. Furthermore, Plaintiff argues that Defendants' investigation was a mere pretext to terminate him because of his race (Dkt. 42 at 19).

First, Plaintiff argues that Defendants' light discipline of similarly situated non-African American males while he was terminated shows pretext. Showing that Defendants treated similarly situated employees outside Plaintiff's protected class more favorably would be probative of pretext. See Vasquez, 349 F.3d at 641. However, individuals are only similarly situated when they have similar jobs and display similar conduct. Id. In the present case, Plaintiff has failed to present sufficient evidence that Defendants accused the non-African American employees of similar misconduct or misconduct of comparable seriousness in order to demonstrate pretext. See id. (finding that plaintiff failed to produce sufficient evidence of pretext where the individuals to which he compared himself were not similarly situated because they did not hold similar jobs and were not involved in same type of offense). As noted, only Guy Horn comes close to Plaintiff in terms of similar misconduct or misconduct of comparable seriousness. However, Defendants have put forth evidence that Plaintiff's conduct warranted more severe punishment for legitimate nondiscriminatory reasons, and Plaintiff has not shown that Defendants' actions were a mere pretext for discrimination.

Sexual harassment is a violation of Title VII, for which employers can be held liable. See, e.g., Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (9th Cir. 2008). From their investigation, Defendants learned of Plaintiff's repeated inappropriate behavior in violation of their sexual harassment policies (Dkt. 36, 14:2-3). "As an experienced human resources professional," Kevin Upham tried "to ensure that similarly-situated Associates [were] being treated the same" (Dkt. 37, Ex. 5, Decl. of Kevin Upham ¶ 16). With regards to Horn, Upham considered the allegations against Horn and the decision to give him Step III training, which is the most severe discipline below termination (Id. ¶ 16, 19). Upham also considered how Horn made inappropriate comments on only one day and never engaged in appropriate touching, in contrast with Plaintiff (Id. ¶ 16). Upham discussed with Parrish the possibility of transferring Plaintiff and requiring him to take Step III training, but they "did not want him to repeat his behavior elsewhere and *subject the Company to liability*" (Id. ¶ 19) (emphasis added). "Therefore, because of the nature, number and severity of the complaints against [Plaintiff] (that included repeated sexual comments and inappropriate touching), and the relatively less severe conduct of the other Associates in Buckeye who had not been terminated, Mr. Parrish decided termination was warranted" (Id.). Plaintiff has no evidence demonstrating that Defendants' legitimate business decision regarding Plaintiff was a pretext for discrimination.

In addition, Plaintiff has not shown that Tonya Runnels and Upham, the persons who conducted Plaintiff's investigation, also conducted the investigations of the other employees. Runnels was fairly new in her position as Human Resource Manager, and therefore, she did not conduct the investigation of Horn for his actions that occurred on September 4, 2003. Furthermore, it is unclear whether Upham participated in the investigation of Horn. This is significant because the individual in charge of an investigation has tremendous influence over how the investigation is conducted. See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct), cited

with approval in, <u>Vasquez</u>, 349 F.3d at 642 n.17; <u>Wheeler v. Aventis Pharms.</u>, 360 F.3d 853, 859 (8th Cir. 2004) (finding that technique employed during an investigation is a matter of business judgment). When Runnels initiated the investigation against Plaintiff, as a relatively new human resources manager she may have employed a different technique than the previous human resources manager, which is a matter of business judgment. Plaintiff has no evidence to the contrary.

At most, Plaintiff can show that Defendants treated Horn differently. Even when viewed in the light most favorable to Plaintiff, though, this argument does not create a genuine issue of material fact as to whether Defendants terminated Plaintiff because he is African American. Plaintiff's mere assertions do not constitute "specific and substantial" circumstantial evidence that challenges the credibility of Defendants' motives. <u>Vasquez</u>, 349 F.3d at 642. Therefore, Plaintiff has not produced circumstantial evidence that creates a genuine issue of material fact as to pretext.

Second, Plaintiff asserts that the manner in which Defendants investigated him demonstrates pretext. Specifically, Plaintiff makes these allegations: (1) Defendants began the investigation of Plaintiff before anyone complained about sexual harassment; (2) Defendants relied on the statements of four employees who were not credible; (3) Defendants reached incorrect conclusions based on their investigation; and (4) Defendants did not keep the investigation confidential (Dkt. 42 at 2-3). The Court addresses each allegation in turn.

First, Plaintiff contends that Defendants began the investigation of Plaintiff before anyone complained about sexual harassment (<u>Id.</u> at 2). Plaintiff alleges that the first allegation of sexual harassment against Plaintiff occurred on April 27, 2005, but Defendants commenced their investigation against him in early April 2005 (<u>Id.</u>). Plaintiff alleges that Marlene McWilliams's complaint caused the investigation (<u>Id.</u>).[4] The evidence belies such

---

[4] Plaintiff alleges that "the first allegation of sexual harassment against [Plaintiff] occurred on April 27, 2005," but then alleges in the next paragraph that McWilliams "caused the investigation . . . on April 26, 2005" (Dkt. 42 at 2). Although Plaintiff himself appears uncertain about when the investigation began, the one-day difference is inconsequential to

an allegation. Plaintiff submitted the investigation report of Plaintiff and written statements by his co-workers under seal (Dkt. 47, Ex. 2). The investigation report and the written statements demonstrate that Defendants took Associate statements as early as April 4, 2005 (See id.).[5] Defendants then later took written statements from these and several more Associates from April 25-28, 2005 (See id.). Therefore, the evidence shows that Defendants began their investigation of Plaintiff in early April 2005, and there is no evidence demonstrating that Defendants began their investigation before anyone made an allegation against Plaintiff.

With regards to Plaintiff's allegation that Defendants did not keep the investigation confidential, the investigation report indicates that Kevin Upham warned nearly every Associate that he interviewed not to discuss the investigation with anyone in the office (See id.). Upham sometimes expanded the warning by telling the Associate that "[i]f someone starts talking to you about this [investigation,] let them know that you aren't allowed to discuss this and refer them to Bill [Hudnall] or Tonya [Runnels]" (Id.). Plaintiff produces the testimony of two Associates that show "the investigation was anything but confidential" (Dkt. 42 at 8). However, Plaintiff cannot attribute the lack of confidentiality to any of Defendants' actions, and Defendants cannot be expected to have complete control over their employees' communications. Most importantly, Plaintiff provides no support for their allegation that a non-confidential investigation by itself demonstrates discrimination.

Plaintiff's remaining allegations relate to Defendants' findings based on their investigation of Plaintiff. According to Plaintiff, Defendants relied on the statements of four employees who were not credible and they reached incorrect conclusions based on their

the thrust of his allegation.

[5] Desiree Draman's and Yolanda Lopez's statements dated April 5, 2005 and April 4, 2005, respectively, are listed as WM0000614-15 and WM0000618 in Dkt. 47, Ex. 2. Furthermore, the first page of the investigation report, which is listed as WM0000604 in Dkt. 47, Ex. 2, lists all of the dates that Associates were interviewed or provided statements.

investigation (Id. at 5-7). In essence, Plaintiff takes issue with the fact that Defendants chose to believe four employees, at least one of which was an alleged victim, over more than twenty other employees that they interviewed (Id. at 5). Plaintiff also attempts to discredit the alleged sexual harassment victims (Id. at 6-7). Incredibly, Plaintiff asserts that Defendants are racially discriminatory because they chose to believe the victim(s) of sexual harassment. As noted, sexual harassment is a serious matter. Defendants interviewed nearly thirty people about the serious allegations. Although more than 20 employees did not report any sexual harassment by Plaintiff, naturally, not every employee can be a key witness to sexual harassment. Just because more employees stated that they did not witness anything does not mean that the alleged harassment did not occur. Defendants chose to believe the victim or victims. Furthermore, Kevin Upham only relied on the allegations that were corroborated by other employees when he prepared his findings and recommendations for Ed Parrish (DSOF ¶¶ 24-25). Plaintiff has not demonstrated that Defendants acted racially discriminatory when they chose to believe the purported victims of sexual harassment.

The most significant flaw in Plaintiff's attempt to rely on Defendants' investigatory techniques as evidence of pretext is that Plaintiff has offered no evidence that Defendants' reason for terminating him was not their true motive or that their explanation for his termination is unworthy of credence. See Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004) (plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence). Defendants have established that they terminated Plaintiff for his inappropriate conduct in violation of their sexual harassment policies. Plaintiff denies the sexual harassment allegations against him and contends that Defendants should not have terminated him. While Defendants' reason for terminating Plaintiff could have been wrong or unfounded, it was not discriminatory.

The issue before this Court is not whether Defendants' conclusions were correct; instead, the issue is whether Defendants conducted a thorough investigation and whether they

made credibility determinations reasonably and in good faith. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (material fact is not whether employee actually committed misconduct, but rather, whether employer "honestly believed its reason for its actions, even if its reason is . . . baseless") (citation omitted). Plaintiff does not argue that Defendants' belief he acted inappropriately was not based on good faith or had discriminatory intent behind it. Essentially, Plaintiff contends his investigation was pretext simply because the decision to terminate him was erroneous. In the present case, the evidence shows that Defendants conducted a thorough investigation and made reasonable, good faith credibility determinations (See DSOF ¶¶ 10-29). Differences in the type of discipline in the instant case and other investigations are not evidence that Defendants were motivated by discriminatory intent, or that Defendants' explanation is not believable for some other reason. See Vasquez, 349 F.3d at 642. Nothing in the record contradicts the fact that Defendants honestly and reasonably believed that Plaintiff's conduct was inappropriate and potentially sexually harassment that could subject the company to liability (DSOF ¶ 29). See Villiarimo, 281 F.3d at 1063. Thus, even assuming that Defendants could have performed a better investigation or their conclusion was incorrect, Plaintiff has not produced any evidence that Defendants' legitimate nondiscriminatory reasons for terminating him were a pretext.

Plaintiff has not offered any direct evidence that discriminatory intent motivated Defendants. Nor has he shown that Defendants' explanation is unbelievable for some other reason. To show pretext using circumstantial evidence, Plaintiff must put forward specific and substantial evidence challenging the credibility of Defendants' motives. He has failed to do so. "When a motion for summary judgment is made, the adverse party may not rest upon mere allegations [or] denials of pleadings, but [its] response must set forth specific facts showing that there is a genuine issue for trial." Brinson, 53 F.3d at 1049 (citation omitted). This principle is especially important here because the motions for summary judgment were filed after substantial discovery was taken and had closed. Although Plaintiff made a prima

facie showing on his disparate treatment claim, he failed to produce any evidence to create a genuine issue of material fact that Defendants' legitimate reasons for terminating him were pretextual. See Celotex, 477 U.S. at 323. Therefore, the Court will grant summary judgment in Defendants' favor.

## CONCLUSION

Summary judgment is proper as to Plaintiff's claim of race discrimination under Title VII. Plaintiff's claim fails as a matter of law because Plaintiff has not shown that Defendants' legitimate, nondiscriminatory reason for terminating him was mere pretext.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 36) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of Defendants and terminate this matter.

DATED this 3rd day of August, 2009.

Stephen M. McNamee
United States District Judge